# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3196

_____

| | | |
|---|---|---|
| Estate of Duane B. Farnam, Deceased, | * | |
| Mark D. Farnam, Personal | * | |
| Representative, Estate of Lois L. | * | |
| Farnam, Deceased, Mark D. Farnam, | * | |
| Personal Representative, | * | Appeal from the United States |
| | * | Tax Court |
| Appellants, | * | |
| | * | |
| v. | * | |
| | * | |
| Commissioner of Internal Revenue, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: June 10, 2009
Filed: October 8, 2009

_____

Before SMITH and SHEPHERD, Circuit Judges, and LIMBAUGH,[1] District Judge.

_____

LIMBAUGH, District Judge.

This is an estate tax case in which the single issue is whether certain unsecured loans made by the decedents to a family-owned corporation constitute "interests" in the corporation, as that term is used to determine the estates' eligibility for "qualified

_____

[1]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri, sitting by designation.

family-owned business interest" (QFOBI) deductions under I.R.C. § 2057(a). The Tax Court, hearing the case on a stipulated record, disallowed the deductions, holding that an "interest" in a corporation is necessarily limited to an equity or ownership interest, and does not include a creditor's "interest" in an unsecured debt owed by the corporation. Affirmed.

Duane and Lois Farnam's family-owned business, Farnam's Genuine Parts, Inc. (Farnam Parts), was incorporated in Minnesota on April 27, 1981. At the time of its incorporation, Farnam Parts operated four retail automotive parts stores, and Duane Farnam was its sole shareholder. Over the years, Farnam Parts' business expanded, and by May, 2000, it operated 17 retail stores in Minnesota, North Dakota and South Dakota. Throughout its existence, Farnam Parts has been owned and managed by members of the family. On the date of Mr. Farnan's death, September 6, 2001, Mr. and Mrs. Farnam, and their son, Mark, collectively owned all of the voting and non-voting shares of the company stock; and when Mrs. Farnam died on June 23, 2003, she and Mark held all of the shares. Mark now serves as personal representative of both estates.

Beginning in 1981, and every year thereafter, Farnam Parts borrowed funds from its shareholders or persons or entities related to its shareholders to support its business operations. Farnam Parts issued promissory notes evidencing the loans, which were unsecured and subordinated to the claims of its outside creditors. Initially, Farnam Parts paid only the principal on the borrowed funds, but beginning in 1984, in response to new tax laws, the company made annual payments of principal and interest on the notes. Each year the aggregate loan amounts varied due to additional advances, interest payments, principal repayments and accrued but unpaid interest.

The estates timely filed federal estate tax returns. The DBF estate claimed a qualified family-owned business interest deduction under I.R.C. § 2027 in the amount of $625,000, and the LLF estate claimed a similar deduction in the amount of

$675,000. In order for an estate to qualify for the QFOBI deduction, it must meet the 50-percent liquidity test set out in I.R.C. § 2057(b)(1)(C), which requires that at least 50% of an estate's value must consist of QFOBIs. In calculating the QFOBI percentage for each estate, the estates included both the value of decedents' stock interests in Farnam Parts and the value of decedents' Farnam Parts promissory notes. According to the parties' stipulation, the percentage of QFOBIs included in the DBF estate for purposes of the 50-percent liquidity test was 80.28% if the Farnam Parts notes are treated as QFOBIs, but only 43.75% if the notes are not treated as QFOBIs; the percentage of QFOBIs included in the LLF estate for purposes of the 50-percent liquidity test is 56.23% if the Farnam Parts notes are treated as QFOBIs but only 24.14% if the notes are not treated as QFOBIs. The parties further agree that if the notes qualify for the 50-percent liquidity test, the estates are entitled to the deductions, and if the notes do not qualify, the deductions must be disallowed.

As noted, this case turns on whether the term, "interest," or "interest in an entity," as used in the statutory definition of a qualified family-owned business interest, includes both equity and debt interests, or equity interests only. The estates do not contend that the shareholder loans constitute an equity, or ownership interest in Farnam Parts, but only that they constitute a debt interest in Farnam Parts. The estates' interests, then, as holders of the promissory notes that evidence the loans, is only that of creditors of the company, not owners. Nonetheless, as we understand the estates' argument, the term "interest in an entity" is unrestricted and unqualified, and therefore includes an interest of any kind, even an "interest" in collecting a debt from the company.

With that understanding, we now consider the definition of qualified family-owned business interest, set forth in I.R.C. § 2057(e)(1) as follows:

> (1)    In general – For purposes of this section, the term "qualified family-owned business interest" means –

-3-

> (A)    an interest as a proprietor in a trade or business carried on as a proprietorship, or
>
> (B)    *an interest in an entity carrying on a trade or business, if-*
>
>     (i) *at least -*
>
>         (I) *50 percent of such entity is owned (directly or indirectly) by the decedent and members of the decedent's family,*
>
>         (II) 70 percent of such entity is so owned by members of 2 families, or
>
>         (III) 90 percent of such entity is so owned by members of 3 families, and
>
>     (ii) for purposes of subclause (II) or (III) of clause (i), at least 30 percent of such entity is so owned by the decedent and members of the decedent's family.

I.R.C. § 2057(e)(1) (emphasis added).

The goal of statutory analysis, of course, is to give effect to the Congressional intent behind the statute's enactment, Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984). The first step to that end "is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997). If so, the analysis ends and the court applies the statute's plain meaning. Bartman v. Comm'r, 446 F.3d 785, 787-88 (8th Cir. 2006). In determining whether statutory language is plain and unambiguous, the court must read all parts of the statute together and give full effect to each part. Flahertys Arden Bowl, Inc. v. Comm'r, 115 T.C. 269, 274 (2000), aff'd, 271 F.3d 763 (8th Cir. 2001) (per curiam). If, however, the language of the statute is ambiguous, the court may examine legislative history and other authorities to determine legislative intent. Burlington N. R.R. Co. v. Okla. Tax Comm'n, 481 U.S. 454, 461 (1987).

Applying these principles, and particularly the admonition that all parts of the statute are to be read together, the plain meaning becomes clear. Although section 2057(e)(1)(B) refers to "an interest in an entity carrying on a trade or business," and the term "interest in an entity," standing alone, is arguably open-ended, clause (i), which immediately follows, requires in pertinent part that "at least . . . 50 percent of such entity [must be] owned (directly or indirectly) by the decedent and members of the decedent's family. . . ." The use of the word, "owned," then, refers to the term "such entity" which in turn refers back to the term "interest in an entity" so that an interest in an entity necessarily means an ownership interest in an entity. In fact, a later provision, section 2057 (e)(3)(A) expressly restricts the kind of interest that qualifies under clause (i) to "the ownership of stock in a corporation or the ownership of a capital interest in a partnership." In view of the context of the entire section as revealed in clause (i), there is no ambiguity, and in the absence of ambiguity, there is no need to resort to legislative history, rules of statutory construction, or any other means to determine Congressional intent.

Even without the context of the statute as a whole, the plain and ordinary meaning of the words "interest in an entity," is that the person who holds that interest has an ownership interest in it. In contrast, it strains common understanding to say that a person holds an interest in an entity merely because he or she is a creditor of that entity. That person has an interest in the entity only in the broadest sense that he or she looks to the entity to secure repayment of the debt. It bears mention as well that the statute does not refer to the more broad and inclusive term "any interest," but only to "an interest," and had Congress intended to include a more broad and inclusive term, it could have done so. Again, we find no ambiguity.

The primary focus of the estates' argument is on the policy consideration that the QFOBI deduction under section 2057 "is a remedial estate tax provision enacted to protect and preserve family-owned farms and businesses by reducing the need to sell all or part of such family enterprises to pay estate taxes." To limit the operation

of section 2057 to equity ownership interests, they explain, defeats the remedial purpose of the statute by unfairly penalizing those families that have chosen to finance their business operations through personal shareholder loans. Although the estates are correct in their description of the remedial purpose of the statute and the adverse effect it will have if applied only to equity interests, the plain meaning of the statute controls, and again, there is no need to resort to policy considerations, legislative history and other means for resolving any ambiguity. Besides, the remedial purpose of the statute is not altogether defeated because the decedents easily could have structured their corporate debt by avoiding personal shareholder loans in favor of outside financing and thereby taken full advantage of the available deductions.

For the foregoing reasons, the judgment of the Tax Court is affirmed.

SHEPHERD, Circuit Judge, dissenting.

As the majority concedes, Congress enacted section 2057 in order to effectuate the remedial purpose of preserving family-owned farms and businesses—such as the Farnam's business—by reducing the need for the liquidation of all or part of such family enterprises to pay federal estate taxes. See ante at 5-6. Nevertheless, through today's opinion, this court ignores not only congressional intent but also the clear meaning of the broad language which Congress selected in order to bring about this purpose.

> [O]ur starting point in interpreting a statute is always the language of the statute itself. If the plain language of the statute is unambiguous, that language is conclusive absent clear legislative intent to the contrary. Therefore, if the intent of Congress can be clearly discerned from the statute's language, the judicial inquiry must end. If, on the other hand, the language of a statute is ambiguous, we should consider "the purpose, the subject matter and the condition of affairs which led to its enactment." When the meaning of a statute is questionable, it should be

given a sensible construction and construed to effectuate the underlying purposes of the law.

United States v. McAllister, 225 F.3d 982, 986 (8th Cir. 2000) (quoting United States v. S.A., 129 F.3d 995, 998 (8th Cir. 1997) (internal citations omitted).

Turning to the language of the statute itself, it can not be argued that the term "qualified family-owned business interest" as defined by section 2057(e)(1)(B)'s phrase "an interest in an entity" excludes, by its express terms, an interest in the form of loan indebtedness owed by the family business to family shareholders. Further, in my view, nothing in section 2057 indicates that Congress intended to limit the term "interest" to less than its full meaning, which would include both debt and equity interests. I can only conclude that, had Congress intended to limit the scope of "an interest in an entity" in the way found by the majority, it would have inserted the terms "equity," "common stock," "real property," or the like, before the word "interest" in section 2057, as it has done in limiting the types of interests referred to in other sections of the Internal Revenue Code. See I.R.C. §§ 150(d)(3)(D)(iv) ("equity interest"); 332(d)(4) ("ownership interest"); 351(e)(1)(B)(ii) ("equity interests"). To the contrary, the broad language of the statute is sufficient to encompass ownership interest in the form of shareholder loans such as those made by the appellant's decedents, Lois and Duane Farnam, and entities owned by them, as part of the structuring of their rural auto parts business.

The broad scope of "qualified family-owned business interest" is further evidenced by the House-Senate Committee Conference report on section 2057, which states that a qualified family-owned business interest includes "any interest in a trade or business (regardless of the form in which it is held) with a principal place of business in the United States if ownership of the trade or business is held at least 50 percent by one family." H.R. Rep. No. 105-220, at 396 (1997) (Conf. Rep.). I agree

with the appellants that the parenthetical language from the report demonstrates that Congress intended for the tax deduction to apply to more than equity interests.

No one questions that prior to the deaths of Lois and Duane Farnam, they, along with their son, were vested with full ownership of their family auto parts supply business. Part of that ownership interest was in the form of indebtedness owing to the Farnams, not as mere creditors of the family corporation, but by virtue of family shareholder loans made by the Farnams as part of the family's plan for the structure and ownership of this family business. To determine, as has the majority, that such debt interest does not constitute a "qualified family-owned business interest" ignores the real life practicalities of family business planning and is directly opposed to the congressional intent reflected in section 2057.

Respectfully, I dissent.

_____