# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2158

_____

Center for Special Needs Trust     *
Administration, Inc.,                   *
                                      *

       Appellant,                *
                                      *    Appeal from the United States
     v.                            *    District Court for the District
                                      *    of North Dakota.
Carol K. Olson, in her official capacity   *
as Executive Director of North Dakota   *
Department of Human Services,        *
                                      *

       Appellant.               *

_____

Submitted: November 16, 2011
Filed: April 16, 2012

_____

Before WOLLMAN, MURPHY, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

     This case addresses the effect of a pooled special-needs trust created by an over-65-year-old beneficiary on his Medicaid benefits. The Center for Special Needs Trust Administration, a section 501(c)(3) non-profit, appeals a summary judgment in favor of the North Dakota Department of Human Services. Invoking 42 U.S.C. § 1983 and the Constitution's Supremacy Clause, Article VI, clause 2, the Center alleges that North Dakota's demand for reimbursement and its state regulations

violate a paragraph of the Medicaid Act, 42 U.S.C. § 1396p(d)(4)(C). The district court[1] ruled that North Dakota was entitled to reimbursement, and that its regulations are consistent with the Medicaid Act. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

A.

In 2007, Allen H. Kemmet, a disabled nursing-home resident, transferred $54,450 to the Center for deposit in a "C" pooled special-needs trust. He later applied for Medicaid. When the North Dakota Department of Human Services received his Medicaid application, it mistakenly recorded him as 54 years old; he was 78. North Dakota approved his application and did not penalize his transfer of funds to the pooled trust. North Dakota provided benefits to Kemmet in the amount of $41,135.19 to cover his care in the nursing facility. After Kemmet's death in October 2008, North Dakota decided it had erroneously found him eligible and should not have paid the benefits (based on his true age). North Dakota demanded reimbursement for the services it provided Kemmet, contending that his payment of $54,450 to the Center disqualified him for Medicaid, citing 42 U.S.C. § 1396p(c)(2), N.D.C.C. § 50-24.1-02(1), and N.D. Admin. Code § 75-02-02.1-33.2(7)(b)(4). According to North Dakota, the transfer of funds was disqualifying because it was not within the exception in paragraph 1396p(c)(2)(B)(iv) for assets "transferred to a trust (*including* a trust described in subsection (d)(4) of this section) established solely for the benefit of an individual *under 65 years of age* who is disabled." (emphases added). *See also* **N.D. Admin. Code § 75-02-02.1-33.2(7)(b)(4)** (stating that an individual may be disqualified from Medicaid to the extent that his assets were

---

[1] The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

-2-

transferred to a trust established solely for the benefit of an individual less than 65 who is disabled).

The Center refused to reimburse North Dakota and sued for (1) a declaratory judgment that North Dakota violated federal law by demanding payment from the Center, and that the state regulations on pooled trusts conflict with federal law; (2) an injunction that the agency stop demanding payment from pooled trusts upon the death of a beneficiary; and (3) an award of costs and reasonable attorney fees under 42 U.S.C. § 1988.

Both parties moved for summary judgment. The Center contended that (1) North Dakota waived its claim by its initial approval, (2) North Dakota is estopped from claiming the trust was not compliant, (3) the North Dakota regulations conflict with the Medicaid Act, and (4) the Act preempts the rules and policies relied upon by North Dakota. North Dakota responded that (1) the Center lacks standing, (2) the complaint fails to allege a violation of a federally-protected right, and (3) the Medicaid Act does not preempt state law in this case.

The district court ruled that North Dakota had not waived its claim and was not estopped, and that the case did not involve preemption. The court determined that the Center had standing and a basis for a § 1983 claim. However, the court concluded that the § 1983 claim lacked merit, deferring to a 2008 federal agency letter that indicated transfers to pooled trusts made by people 65 and older disqualified them from Medicaid. The court dismissed the case. The Center appeals.

B.

Medicaid, a cooperative federal aid program, helps the states provide medical assistance to the poor. ***Lankford v. Sherman***, 451 F.3d 496, 504 (8th Cir. 2006),

*citing Schweiker v. Hogan*, 457 U.S. 569, 572 (1982). If a state participates, it must comply with the Medicaid Act and regulations. *Id.*, *citing Schweiker v. Gray Panthers,* 453 U.S. 34, 37 (1981); *Bowlin v. Montanez*, 446 F.3d 817, 818 (8th Cir. 2006). A state submits a plan to the Secretary of Health and Human Services under 42 U.S.C. § 1396a(a). Once the plan is approved, the federal government subsidizes the state's medical-assistance services. *Lankford*, 451 F.3d at 504. Congress gives states "substantial discretion to choose the proper mix of amount, scope, and duration limitations" of their Medicaid programs. *Alexander v. Choate*, 469 U.S. 287, 303 (1985). However, failure to comply with federal requirements may jeopardize federal funds. *See* **42 U.S.C. §§ 1396a(a)(1)-(65), 1396c**. Among these requirements, states must "comply with the provisions of section 1396p of this title with respect to . . . treatment of certain trusts." **42 U.S.C. § 1396a(a)(18)**.

To be eligible for Medicaid, a person must have income and resources less than thresholds set by the Secretary. **42 U.S.C. § 1396a(a)(17)**. In general, trust assets count as resources for determining Medicaid eligibility. *See* **42 U.S.C. § 1396p(d)(3)**. In 1993, Congress created an exception for special-needs trusts for disabled individuals. **42 U.S.C. § 1396p(d)(4);** *Norwest Bank of N.D. v. Doth,* 159 F.3d 328, 330 (8th Cir. 1998).

This case concerns a specific type "C" special-needs trust – a pooled special-needs trust that pays for a disabled person's Medicaid-ineligible expenses, such as clothing, phone service, vehicle maintenance, and taxes. **42 U.S.C. § 1396p(d)(4)(C)**. A type "C" trust may be established by the beneficiary or a third party. The non-profit organization as trustee manages the pooled assets of many disabled individuals (with separate accounts for each beneficiary). Residual amounts in the pooled trust after the beneficiary's death do not have to be paid back to the state, and may be kept by the non-profit for the benefit of other pooled-trust beneficiaries. *Id.* The Medicaid Act describes pooled special-needs trusts:

-4-

(d) **Treatment of trust amounts**

. . . .

(4) This subsection shall not apply to any of the following trusts:

. . . .

(C) A trust containing the assets of an individual who is disabled (as defined in section 1382c(a)(3) of this title) that meets the following conditions:

(i) The trust is established and managed by a non-profit association.

(ii) A separate account is maintained for each beneficiary of the trust, but, for purposes of investment and management of funds, the trust pools these accounts.

(iii) Accounts in the trust are established solely for the benefit of individuals who are disabled (as defined in section 1614(a)(3)) [42 U.S.C. § 1382c(a)(3)] by the parent, grandparent, or legal guardian of such individuals, by such individuals, or by a court.

(iv) To the extent that amounts remaining in the beneficiary's account upon the death of the beneficiary are not retained by the trust, the trust pays to the State from such remaining amounts in the account an amount equal to the total amount of medical assistance paid on behalf of the beneficiary under the State plan under this title [42 U.S.C. § 1396 *et seq.*].

**42 U.S.C. § 1396p(d)(4)(C)**.  This paragraph has no age limit.

Two predecessor paragraphs, however, have age limits:

(c) **Taking into account certain transfers of assets**

. . . .

(2) An individual shall not be ineligible for medical assistance by reason of paragraph (1) to the extent that –

. . . .

(B) the assets –

. . . .

(iv) were transferred to a trust (including a trust described in subsection (d)(4) of this section) established solely for the benefit of an individual *under 65 years of age* who is disabled (as defined in section 1382c(a)(3) of this title);

**42 U.S.C. § 1396p(c)(2)(B)(iv)** (emphasis added).  The second paragraph provides:

(d) **Treatment of trust amounts**

. . . .

(4) This subsection shall not apply to any of the following trusts:
(A) A trust containing the assets of an individual *under age 65* who is disabled (as defined in section 1382c(a)(3) of this title) and which is established for the benefit of such individual by a parent, grandparent, legal guardian of the individual, or a court if the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan under this subchapter.

**42 U.S.C. § 1396p(d)(4)(A)** (emphasis added).  Under this type "A" trust, a disabled person under the age of 65 remains eligible for Medicaid, even if the person is the beneficiary of a special-needs trust that provides "a supplement to enhance the quality of their lives."  ***Norwest Bank of N.D.***, 159 F.3d at 330.  Eligibility continues "so long as the ["A" trust] contains a pay-back trust provision, *i.e.*, a provision specifying that the total [assistance] provided on or after October 1, 1993, will be paid back to the state after the beneficiaries' death from any funds remaining in the trust."  ***Id.***  A type "A" trust must be established by a third party.

The Center contends that the North Dakota regulations 75-02-02.1-31.1(4)(b) and (8)(f) conflict with federal Medicaid law and regulations, by establishing additional requirements for "C" trust assets. These North Dakota regulations require that a "C" special-needs trust be "established and managed by a *qualified* nonprofit association that acts as trustee." **N.D. Admin. Code § 75-02-02.1-31.1(4)(b)** (emphasis added). A qualified association is defined as:

> 8. A nonprofit association is *qualified* to establish and manage a trust described in subdivision b of subsection 4 only if the nonprofit corporation:
>
> . . . .
>
> f. Retains funds from a deceased beneficiary's account only if:
>
> (1) The retained funds are to compensate the trust for services rendered;
>
> (2) The account is that of a beneficiary who was a disabled individual who did not receive benefits under this chapter; or
>
> (3) The account does not contain the assets of a disabled individual.

**N.D. Admin. Code § 75-02-02.1-31.1(8)(f)** (emphasis added).

Another North Dakota regulation provides an exception for assets transferred to a trust "established solely for the benefit of an individual *under 65 years of age* who is disabled." **N.D. Admin. Code § 75-02-02.1-33.2(7)(b)(4)** (emphasis added). By it, disabled individuals over 65 are disqualified for Medicaid by the amount of assets they transfer to a "C" pooled special-needs trust:

> 7. An individual may not be ineligible for medicaid by reason of subsection 1 to the extent that:
>
> . . . .
>
> b. The income or assets:

. . . .

(4) Were transferred to a trust established solely for the benefit of an individual less than sixty-five years of age who is disabled;

*Id.*

## II.

Before addressing the merits, this court must resolve whether the Center has standing to sue – a jurisdictional issue raised in North Dakota's brief and at oral argument. *See **South Dakota v. U.S. Dep't of Interior***, 665 F.3d 986, 989 (8th Cir. 2012) (standing is "a threshold inquiry, which must be resolved before reaching the merits of a suit"). The district court ruled that the Center had standing because North Dakota might seek reimbursement from the Center in the future, and because the North Dakota regulations deter individuals from transferring their funds to the Center.

North Dakota argues that the Center lacks standing because North Dakota abandoned reliance on its administrative regulations before suit was filed, changing the basis of its request to common law fraud and conversion. The Center responds that it meets the requirements of a pooled trust under paragraph 1396p(d)(4)(C), and suffers an injury from North Dakota's failure to comply with the Medicaid Act. According to the Center, the case is not moot, because North Dakota reserves the right to apply its regulations to the Center in future cases where North Dakotans over 65 participate in a pooled trust.

"To show Article III standing, a plaintiff has the burden of proving: (1) that he or she suffered an injury-in-fact, (2) a causal relationship between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision." *Id.*, *quoting **Pucket v. Hot Springs Sch. Dist. No. 23-2***, 526 F.3d 1151, 1157 (8th Cir. 2008); *see also **Lujan v. Defenders of Wildlife***, 504 U.S. 555, 560-61

(1992).  The defendant faces a heavy burden of showing that "the challenged conduct cannot reasonably be expected to start up again."  *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006), *quoting* *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., Inc.*, 528 U.S. 167, 189 (2000).  The test for mootness is stringent.  Mere voluntary cessation of allegedly illegal conduct does not moot a case; otherwise, the courts would be compelled to leave '[t]he defendant . . . free to return to his old ways.'" *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982), *citing* *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953).  Instead, a case becomes moot if it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  *Strutton v. Meade*, 668 F.3d 549, 556 (8th Cir. 2012), *quoting Laidlaw*, 528 U.S. at 189.


North Dakota does not meet the heavy burden to show mootness.  North Dakota expressly reserved the right to apply its regulations against the Center in the future.  North Dakota fails to show that its regulations-based request for reimbursement "could not reasonably be expected to recur."  Though North Dakota says there is no live dispute about the regulations, this case would not exist but for the differing interpretations of the pooled-trust exemption.  Both parties rely on the age-requirement provision (or lack thereof).  Further, the Center alleges an "injury in fact" under the regulations.  If not for the "under-65" interpretation in the North Dakota regulations, state officials would not have challenged Kemmet's request for benefits.  Once the mistake in age was discovered, North Dakota demanded reimbursement from the Center.  The Center has alleged an injury in fact, caused by North Dakota's interpretation of its regulations, which is redressable.  As standing is proper, this court turns to the merits.

III.

The Center contends the district court erred by: finding that North Dakota did not waive its claim and is not estopped from making it; concluding that preemption did not apply; and granting substantial deference to a federal opinion letter, contrary to the plain language of the Medicaid Act.

This court reviews de novo a grant of summary judgment. *Mason v. Correctional Med. Servs., Inc.*, 559 F.3d 880, 884 (8th Cir. 2009). Summary judgment should be granted when – viewing the facts most favorably to the nonmoving party and giving that party the benefit of all reasonable inferences – the record shows that there is no genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir.) (en banc), *cert. denied*, 132 S. Ct. 513 (2011).

A.

The Center asserts that North Dakota waived its claim and is equitably estopped from demanding reimbursement because it originally approved Kemmet's application and gave him benefits.

Under North Dakota law, waiver is "the voluntary and intentional relinquishment and abandonment of a known existing right, advantage, benefit, claim, or privilege which, except for [the] waiver, the party would have enjoyed." *Runck v. Kutmus*, 997 F.3d 399, 400 (8th Cir. 1993), *quoting Brunsoman v. Scarlett*, 465 N.W.2d 162, 168 (N.D. 1991). Waiver may be shown by conduct revealing an intention to waive. *Id.* The Center argues that North Dakota's approval of Kemmet's

-10-

application relinquished its known existing claim that the trust conflicted with its state regulations. It is undisputed that North Dakota officials mistakenly calculated Kemmet's age. A state may make ongoing determinations regarding a recipient's eligibility for Medicaid. **42 C.F.R. § 435.916** (requiring periodic redeterminations of Medicaid eligibility); **N.D. Admin. § Code. 75-02-02.1-02** (specifying standards for redetermination). No facts indicate North Dakota officials voluntarily and intentionally relinquished the right to make a potential future claim that the trust did not comply with its regulations. The issue is not waived.

To establish a claim of equitable estoppel against the government, the claimant must prove: 1) a false representation by the government; 2) that the government had the intent to induce the plaintiff to act on the misrepresentation; 3) the plaintiff's lack of knowledge or inability to obtain the true facts; and 4) the plaintiff's reliance on the misrepresentation to his detriment. ***Rutten v. United States***, 299 F.3d 993, 995-96 (8th Cir. 2002), *citing **Story v. Marsh**,* 732 F.2d 1375, 1383 (8th Cir. 1984). In addition, "the plaintiff must first establish that the government committed affirmative misconduct." ***Id.*** at 995. Under North Dakota law, estoppel against the government is available in limited circumstances and should be applied "on a case-by-case basis with a careful weighing of the inequities that would result if the doctrine is *not* applied versus the public interest at stake and the resulting harm to that interest if the doctrine *is* applied." ***J.P. v. Stark Cnty. Social Servs. Bd.***, 737 N.W.2d 627, 635 (N.D. 2007) (emphasis in original), *quoting **Blocker Drilling Canada, Ltd. v. Conrad**,* 354 N.W.2d 912, 920 (N.D. 1984). It is undisputed that North Dakota mistakenly identified Kemmet as 54 when he was 78, and as a result did not claim his trust transfer was disqualifying. The mistake here in recording a Medicaid applicant's age is not affirmative misconduct. North Dakota is not estopped from claiming the trust was improper.

B.

The next issue is whether the Medicaid statute gives a cause of action under 42 U.S.C. § 1983. North Dakota asserts that paragraph 1396p(d)(4)(C) does not create a federal right under section 1983, because it applies only to a state in its administration of Medicaid, not to a trust like the Center. *See, e.g.*, **Gonzaga Univ. v. Doe**, 536 U.S. 273, 283-84 (2002). North Dakota believes that the only remedy for a state's noncompliance is the loss of federal funds, foreclosing private enforcement.

This court reviews de novo the district court's decision regarding the existence of a federal right enforceable under section 1983. **United States v. Clark**, 563 F.3d 771, 772 (8th Cir. 2009). A plaintiff invoking section 1983 "must assert the violation of a federal *right*, not merely a violation of federal *law*." **Blessing v. Freestone**, 520 U.S. 329, 340 (1997) (emphasis in original), *citing* **Golden State Transit Corp. v. City of Los Angeles**, 493 U.S. 103, 106 (1989). A state's non-compliance with legislation enacted under Congress's spending power, such as the Medicaid Act, "typically does not create a private right of action for individual plaintiffs, but rather an action by the federal government to terminate federal matching funds." **Lankford**, 451 F.3d at 508, *citing* **Pennhurst State Sch. & Hosp. v. Halderman**, 451 U.S. 1, 28 (1981). Nevertheless, in limited circumstances, spending-power legislation may create a private right of action under section 1983. "A three-part test determines whether Spending Clause legislation creates a private right of action under 42 U.S.C. § 1983: (1) Congress intended the statutory provision to benefit the plaintiff; (2) the asserted right is not so 'vague and amorphous' that its enforcement would strain judicial competence; and (3) the provision clearly imposes a mandatory obligation upon the states." **Lankford**, 451 F.3d at 508, *quoting* **Blessing**, 520 U.S. at 340-41. If the legislation meets the three *Blessing* prongs, it is presumed enforceable under section 1983. **Id.** "The presumption is rebutted if Congress explicitly or implicitly forecloses section 1983 enforcement." **Id.**, *citing* **Blessing**, 520 U.S. at 347 (noting that implied

foreclosure occurs if Congress creates "a comprehensive enforcement scheme that is incompatible with individual enforcement"). "The availability of administrative mechanisms alone, however, cannot defeat the plaintiff's ability to invoke section 1983, so long as the other requirements of the three-part test are met." *Id.*

The Center meets the three-part *Blessing* test for a private right of action under section 1983 to enforce the Medicaid Act's provision on pooled trusts. The first prong requires that Congress intend the statutory provision to benefit the plaintiff. *Blessing*, 520 U.S. at 340-41. The provision here, paragraph 1396p(d)(4)(C), specifies how a state treats an individual's trust assets for deciding Medicaid eligibility. The Center, as a non-profit pooled trustee, would benefit from the trusts authorized by paragraph 1396p(d)(4)(C), and thus is an intended beneficiary of the law. Because paragraph 1396p(d)(4)(C) addresses the Center's business – and does not solely tell the state how to act – it was intended to benefit pooled trusts, as well as individuals.

The second prong requires that the right protected by the statute not be so "vague and amorphous" as beyond the judiciary's competence to enforce. *Lankford*, 451 F.3d at 508. In *Lankford*, this court determined that the reasonable-standards requirement of the Medicaid Act did not meet the second prong of the *Blessing* test. *Id.* at 509. This court emphasized that the provision there "sets forth only broad, general goals, which the states have broad discretion to implement." *Id.* Unlike the provision in *Lankford*, the language of paragraph 1396p(d)(4)(C) describes the trusts that the Center can market. By describing a specific type "C" trust, the statute sets forth more than broad, general goals. **42 U.S.C. § 1396p(d)(4)(C)**. Determining which assets qualify under 1396p(d)(4)(C) is not too vague and amorphous, and does not strain the judicial competence.

The third prong of the *Blessing* test is whether the statute unambiguously imposes a binding obligation on the states. "In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms." *Blessing*, 520 U.S. at 341. The provision here is couched in mandatory terms: "This subsection *shall not* apply to any of the following trusts . . . ." **42 U.S.C. § 1396p(d)(4)** (emphasis added). The use of the word "shall" in section 1396p(d)(4) is mandatory, not precatory. Statutory language such as "must" and "shall" is mandatory under the *Blessing* test. ***Pediatric Specialty Care, Inc. v. Arkansas Dep't of Human Servs***, 293 F.3d 472, 478 (8th Cir. 2002) ("must"); ***Arkansas Med. Soc'y, Inc. v. Reynolds***, 6 F.3d 519, 526 (8th Cir. 1993) ("shall" and "must,"); *see also* ***Bernard v. Kan. Health Policy Auth.***, No. 09-1247-JTM, 2011 WL 768145, at *10-11 (D. Kan. Feb. 28, 2011) (finding the words "shall" and "shall not" in a statute satisfy the mandatory-term requirement of *Blessing*). This court finds the statutory language sufficient "to evince a congressional intent to create individually-enforceable federal rights." ***Lankford***, 451 F.3d at 509.[2]


Because paragraph 1396p(d)(4)(C) meets the three prongs of the *Blessing* test, it is presumed enforceable under section 1983. ***Lankford***, 451 F.3d at 508, *quoting Blessing*, 520 U.S. at 340-41. This presumption is rebutted if Congress explicitly or implicitly forecloses section 1983 enforcement. ***Id.***, *citing Blessing*, 520 U.S. at 347.

---

[2]The only other appeals court to address whether 1396p(d)(4) imposes a binding obligation on the states held that one paragraph, 1396p(d)(4)(A), did *not* unambiguously impose a binding obligation on the state. ***Hobbs v. Zenderman***, 579 F.3d 1171, 1179 (10th Cir. 2009). It found that "Congress left the States free to decide whether and under what conditions to recognize such [§ 1396p(d)(4)] trusts" and that "States '*need not* count [§ 1396p(d)(4)] trusts for eligibility purposes, but nevertheless *may* . . . opt to do so.'" ***Id.*** at 1180, *quoting* ***Keith v. Rizzuto***, 212 F.3d 1190, 1193 (10th Cir. 2000) (emphases and alterations in original). This court declines to apply this reasoning to paragraph 1396p(d)(4)(C), due to mandatory language "shall not" introducing the paragraph.

Congress has not foreclosed section 1983 enforcement of the Medicaid Act. ***Arkansas Med. Soc'y***, 6 F.3d at 528, *citing **Wilder***, 496 U.S. at 520-23 ("The *Wilder* Court found that Congress had not foreclosed § 1983 enforcement in the Medicaid statute, *Wilder*, 496 U.S. at 520-23, 110 S.Ct. at 2523-24, and we are bound by that judgment."). Because the *Blessing* test is met and Congress has not foreclosed section 1983 enforcement of the Medicaid Act, the Center has a cause of action under section 1983.

C.

The Centers for Medicare & Medicaid Services (CMS) – the federal agency that provides guidance on Medicaid – has not issued regulations on section 1396p(d). North Dakota asserts that a 2008 letter from CMS is consistent with its interpretation of paragraph 1396p(d)(4)(C). The 2008 letter says that a "C" trust for people over 65 would contravene the statute.[3] The district court cited the CMS letter at length, and deferred to it.[4]

---

[3]"[O]nly trusts established for disabled individuals age 64 or younger are exempt from application of the transfer of assets penalty provisions (see section [1396p](c)(2)(B)(iv) of the Act). If States are allowing individuals age 65 or older to establish pooled trusts without applying the transfer of assets provisions, they are not in compliance with the statute." Letter from Verlon Johnson, CMS Associate Regional Administrator, U.S. Dep't of Health & Human Servs. Letter 08-03 (July 2008), *available at* http://lawyersusaonline.com/wp-files/pdfs /08-03-cms-pool-trusts.pdf. Seven years earlier, another official of CMS's predecessor wrote an opinion letter flatly stating that "the statute does not impose an age limit on the trust cited at 42 U.S.C. 1396p(d)(4)(C)." *See* Letter from Thomas E. Hamilton, Director of the Disabled and Elderly Health Programs Group, CMS (Aug. 9, 2001), *in* Clifton B. Kruse, Jr., ***Third-Party and Self-Created Trusts – Planning for the Elderly and Disabled Client*** 328 (ABA 3d ed. 2002).

[4]The district court should not have deferred to the CMS letter. *See **Christensen v. Harris Cnty.***, 529 U.S. 576, 587 (2000) (an agency's interpretation of a statute contained in an opinion letter, not promulgated through formal adjudication or rulemaking, does not have the force of law and does not deserve *Chevron* deference),

A district court's interpretation of a federal statute is reviewed de novo. ***Norwest Bank of N.D. v. Doth***, 159 F.3d 328, 332 (8th Cir. 1998). "The starting point in interpreting a statute is always the language of the statute itself." ***United States v. Talley***, 16 F.3d 972, 975 (8th Cir. 1994). The ordinary meaning of the statutory language accurately expresses the legislative purpose. ***United States v. I.L.***, 614 F.3d 817, 820 (8th Cir. 2010), *citing* ***Hardt v. Reliance Standard Life Ins. Co.***, 130 S. Ct. 2149, 2156 (2010).

This court turns first to the plain language of subsection (d), by itself. In one paragraph of subsection (d), Congress omitted any age requirement for pooled special-needs "C" trusts. **42 U.S.C. § 1396p(d)(4)(C)**. At first blush, by the language of paragraph 1396p(d)(4)(C), there is no age limit for disabled beneficiaries of type "C" pooled special-needs trusts. *See* ***Lewis v. Alexander***, 276 F.R.D. 421, 442-44 (E.D. Pa. 2011) (ruling that Pennsylvania's Medicaid statute was preempted because it disqualified over-65 recipients of pooled special needs trust accounts; emphasizing the lack of an age restriction in paragraph 1396p(d)(4)(C); and noting that "Congress has amended Section 1396p four times since its passage in 1993").

---

*citing* ***Chevron USA, Inc. v. Natural Resources Def. Council, Inc.***, 467 U.S. 837, 842-44 (1984) (holding that a court must give effect to an agency's regulation containing a reasonable interpretation of an ambiguous statute). "[I]nterpretations contained in formats such as opinion letters are 'entitled to respect' under our decision in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944), but only to the extent that those interpretations have the 'power to persuade.'" ***Christensen***, 529 U.S. at 587, *citing* ***EEOC v. Arabian American Oil Co.***, 499 U.S. 244, 256-58 (1991); *see also* ***Kai v. Ross***, 336 F.3d 650, 655 (8th Cir. 2003) (holding that a CMS opinion letter stating eligibility requirements not contained in the Medicaid Act was not entitled to *Chevron* deference); ***St. Mary's Hosp. v. Leavitt***, 416 F.3d 906, 914 (8th Cir. 2005) (finding a letter from a Medicare official interpreting the Medicare statute "entitled to respect," but "not entitled to *Chevron-type* deference because it does not appear to have "the force of law."). The issue is whether the CMS letter has persuasive power.

In a second paragraph of subsection (d), however, Congress specifically limited "A" trusts to individuals "under age 65." *See* **42 U.S.C. § 1396p(d)(4)(A)**. "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983). *See Lutheran Social Serv. of Minn. v. United States*, 758 F.2d 1283, 1289 (8th Cir. 1985). This presumption is much stronger when, as here, the comparison is between two paragraphs of the same subsection of a statute. *See Chesnut v. Montgomery*, 307 F.3d 698, 702 (8th Cir. 2002). By the omission of an age limit in the "C" paragraph of subsection (d), Congress's intent was to permit disabled persons over age 65 to *participate* in "C" pooled trusts. In fact, the parties agree that disabled individuals over age 65, like Kemmet, can participate in a type "C" pooled trust. North Dakota, however, insists on a penalty period when an over-65 beneficiary transfers assets into a "C" pooled trust, distinguishing a temporary disqualification from *participation* in a pooled trust.

Decisive is a third paragraph, 1396p(c)(2)(B)(iv). "In determining whether statutory language is plain and unambiguous, the court must read all parts of the statute together and give full effect to each part." *Estate of Farnam v. C.I.R.*, 583 F.3d 581, 584 (8th Cir. 2009). Applying "the admonition that all parts of a statute are to be read together, the plain meaning becomes clear." *Id.* This third paragraph, 1396p(c)(2)(B)(iv), provides:

(c) **Taking into account certain transfers of assets**

. . . .

(2) An individual shall not be ineligible for medical assistance by reason of paragraph (1) to the extent that –

. . . .

(B) the assets –

. . . .

(iv) were transferred to a trust (including a trust described in subsection (d)(4) of this section) established solely for the benefit of an individual *under 65 years of age* who is disabled (as defined in section 1382c(a)(3) of this title);

**42 U.S.C. § 1396p(c)(2)(B)(iv)** (emphasis added).  The Center claims that this paragraph does not apply to a trust like Kemmet's, established by the beneficiary. The Center relies on a Tennessee state-court case that found this third paragraph, (c)(2)(B)(iv), to apply only to trusts "created for the benefit of another person," which would make its age limit inapplicable to "C" trusts created by the beneficiary. *Ruby Beach v. State of Tenn. Dep't of Human Servs.*, No. 09-2120-III, at 28 (Tenn. Ch. Ct. 20th Jud. Dist. of Davidson County Sept. 8, 2010) (unpublished) (ruling that imposing a transfer penalty on pooled trusts for those over 65 violates paragraph 1396p(d)(4)(C)).  To the contrary, the plain language of this paragraph does not address, let alone restrict, the creator of the trust.  By referencing "subsection (d)(4)," paragraph 1396p(c)(2)(B)(iv) necessarily includes trusts created by the beneficiary, because subsection (d)(4)(C) includes trusts created by the beneficiary.  This third paragraph's age limit controls.

When all paragraphs of the statute are read together, a disabled individual over 65 may establish a type "C" pooled trust, but may be subject to a delay in Medicaid benefits.  Despite the lack of an age limit within paragraph 1396p(d)(4)(C) for purposes of counting resources, Congress intended to exempt transfers of assets into pooled trusts from the transfer penalty rules of subsection 1396p(c)(1) only if the transfers were by those under age 65.  **42 U.S.C. § 1396p(c)(2)(B)(iv)**.

The South Dakota Supreme Court has also held that transfers by beneficiaries over age 65 to "C" pooled trusts *are* subject to the Medicaid Act's disqualifying

-18-

penalties. ***In re Pooled Advocate Trust***, ___ N.W.2d ___, 2012 WL 1038644, at \*9 (S.D. Mar. 28, 2012). "[U]nder the unambiguous statutory language, transfers of assets for less than fair market value into ["C"] pooled trusts by beneficiaries age 65 or older will be subject to a transfer penalty period for Medicaid eligibility purposes." ***Id.*** at \*10. The court rejected the trust's argument that penalizing beneficiaries age 65 or older who transfer assets to a "C" pooled trust makes their participation a nullity, rendering the paragraph 1396p(d)(4)(C) exception meaningless. "For whatever reason, the penalty period exception for trust transfers is limited to transfers made to trusts established for individuals under age 65. . ." ***Id.*** The court went on to "acknowledge the impact of a five-year delay in long-term care assistance," but concluded that subsection 1396p "was designed to preserve Medicaid benefits for those who truly lack the assets or resources to financially secure long-term care." ***Id.*** at \*11.

IV.

The Center contends that North Dakota's regulations conflict with the federal Medicaid Act and are preempted. *See* **U.S. Const. Art. VI, cl. 2**. Where Congress has not expressly preempted or entirely displaced state regulation in a specific field, as with the Medicaid Act, "state law is preempted to the extent that it actually conflicts with federal law." ***Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n***, 461 U.S. 190, 203-04 (1983). An actual conflict arises where compliance with both state and federal law is a "physical impossibility," or where the state law "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" ***Id.***, *quoting* ***Fla. Lime & Avocado Growers, Inc. v. Paul***, 373 U.S. 132, 142-43 (1963) *and* ***Hines v. Davidowitz***, 312 U.S. 52, 67 (1941). Because Congress intended for transfers of assets into "C" pooled trusts by beneficiaries age 65 or older to be subject to a transfer penalty period, this case does not present a conflict between the North Dakota regulations and paragraphs

1396p(c)(2)(B)(iv) and (d)(4)(C) of the Medicaid Act, and thus there is no preemption here.

V.

The district court properly determined that section 1396p(d)(4)(C) affords the Center a right of action under section 1983; that North Dakota did not waive its claim for reimbursement and should not be estopped from making that claim; that the Center's claim was without merit; and that preemption does not apply.

* * * * * *

The judgment of the district court is affirmed.

_____